IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


**RONALD E. SMITH,**

    **Plaintiff,**

vs.                                                                   **CASE NO. 1:04CV105-MMP/AK**

**JO ANNE B. BARNHART,**
**Commissioner of Social Security**

    **Defendant.**

_____/

## REPORT AND RECOMMENDATION

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's applications for disability insurance benefits (DIB) under Title II of the Act and supplemental security income benefits (SSI) filed under Title XVI of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

### A.    PROCEDURAL HISTORY

Plaintiff filed applications for disability benefits on November 21, 2000, alleging a disability onset date of November 10, 2000, because of degenerative osteoarthritis. Doc. 15. Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who

conducted a hearing on September 18, 2003, R. 284, and entered an unfavorable decision on October 27, 2003. R. 11. The Appeals Council denied Plaintiff's request for review on July 30, 2004, thus making the decision of the ALJ the final decision of the Commissioner. R. 5. This action followed.

**B.    FINDINGS OF THE ALJ**

The ALJ reviewed the record of the plaintiff's diagnosis by Dr. Wilfrido M. Sy on November 21, 2000, surgery on December 12, 2001 by Dr. Raghava Plavarapu, and second surgery on January 1, 2001. The ALJ also looked at the plaintiff's three residual functional capacity assessments of July 7, 12 and September 25, 2001; Dr. Maria R. Beltran's review of knee x-rays; surgical removal of a right volar wrist ganglion cyst by Dr. Larry K. Chidgey on January 30, 2003; Dr. John S. Shahan's review of neck x-rays on April 18, 2003; a consultative exam by Dr. Anuj Sharma on April 22, 2003; and an examination by Dr. Scott L. Meyers on May 5, 2003. R. 17-19.

The ALJ found that the plaintiff has bilateral severe degenerative arthritis of both knees, his cervical spine has degenerated at C5-7, and there is foraminal encroachment at C4-5. The impairments were found to be severe within the meaning of the Regulations, but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 19.

In determining if the plaintiff retains the residual functional capacity to perform the requirements of his past relevant work, the ALJ considered the plaintiff's hearing testimony about the severity of his pain and his daily activities. R. 20. The ALJ found the plaintiff retained the residual capacity for sedentary work. R. 21. The plaintiff was found

**No. 1:04CV105-MMP/AK**

not to have the capacity to perform his past relevant work. R. 22. Therefore, the ALJ found the plaintiff was not under a disability as defined in the Social Security Act. R. 24.

## C.  ISSUES PRESENTED

Plaintiff argues that the ALJ erred in not finding the plaintiff's testimony regarding his subjective pain symptoms credible. Doc. 15.

The government responds that the final decision is supported by substantial evidence on the record as a whole and the ALJ properly considered the plaintiff's testimony and found it not entirely credible. Doc. 18.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

## D.  STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court.  The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied.  Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997).  Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam).  It is more than a scintilla, but less than a preponderance.  Bloodsworth v. Heckler, 703

F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  The court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996).  It must determine only if substantial evidence supports the findings of the Commissioner.  See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam).  Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them.  Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).  Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal.  Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

**No. 1:04CV105-MMP/AK**

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary.  Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work.  If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

E.  **SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY**

**No. 1:04CV105-MMP/AK**

From a MRI of the plaintiff's right knee, he was diagnosed with type 3 and type 4 meniscal tear on November 21, 2000 by Dr. Wilfrido M. Sy. Blunt spur formations were noted at the femur and some cortical erosion was noted in the surface of the tibia. R. 141.

Plaintiff had arthoscopic surgery performed by Dr. Raghava Plavarapu on December 4, 2000. R. 144. The plaintiff was diagnosed with a torn medial and lateral menisci in the right knee. *Id.*

Due to pain and swelling, he was admitted to the hospital on January 2, 2001 and diagnosed with septic arthritis of the right knee. R. 147. A second operation was performed January 10, 2001 in which the knee was drained of pus and thoroughly irrigated by Dr. Plavarapu. R. 148.

The plaintiff was examined by Dr. Myron Seidman on February 9, 2001 after complaining of joint pain in both knees and hips. R. 153. Plaintiff was assessed as having limitations with right leg controls and limitations with left leg controls because of crepitus with knee flexation. Extensive periods of sitting was not recommended due to knee stiffening, and a follow-up was advised. R. 156.

After an exam on June 6, 2001, Dr. Polavarapu suggested the plaintiff should be limited to standing or walking less than 2 hours per day, sitting less than 6 hours per day, and limited pushing and pulling. R. 171.

Dr. J. B. Jasmin did a residual functional capacity assessment (RFCA) on July 5, 2001 and found the plaintiff's could lift, carry, push and pull no more than 50 pounds; he

**No. 1:04CV105-MMP/AK**

could sit for unlimited periods; could stand for no more than 4 hours; and he should avoid frequent kneeling or crawling. R. 189.

A second RFC was done by A. Thorton on July 12, 2001, who provided the plaintiff could frequently lift up to 25 pounds, could occasionally lift no more than 50 pounds, could stand or walk for at least 2 hours and sit for less than 6 hours in an 8 hour day due to septic arthritis. R. 194.

The third RFC was done by Dr. Harry L. Collins on September 25, 2001 and showed the plaintiff can frequently lift up to 10 pounds and occasionally lift no more than 20 pounds, can stand or walk about 6 hours a day and sit for about 6 hours a day in an 8 hour work day. R. 204.

Dr. Scott Meyers completed a medical verification on March 18, 2002 that stated the plaintiff had a condition that permitted work restrictions such as avoiding prolonged weigh-bearing activities and stairs, and frequent breaks to stand and stretch. R. 121. The plaintiff could work over 30 hours per week within the limitations, and the condition was permanent. *Id.* X-rays showed multiple radiographic projections of bilateral severe degenerative osteoarthritis. R. 270.

After the discovery of a cystic structure on December 30, 2002, the plaintiff had a right volar wrist ganglion cyst surgically removed at Shands HealthCare by Dr. Larry K. Chidgey on January 30, 2003. R. 236. He had a follow-up on February 7, 2003 in which his sutures were removed. *Id.*

**No. 1:04CV105-MMP/AK**

X-rays of plaintiff's neck and shoulders were reviewed on April 18, 2003 by Dr. John S. Shahan, who stated that the findings were comparable with spasm as well as focal degenerative change from C5 to C7 and there were large posterior ostophytes at C5-6 and/or formaninal encroachment at C4-5 bilaterally. R. 222.

Plaintiff had a consultative examination on April 22, 2003 with Dr. Anuj Sharma, who diagnosed the plaintiff with multi-joint osteoarthritis affecting the bilateral hips and knees, signs of cervical spondylosis and pain in the spine, hips and knees. R. 215. Dr. Sharma advised the plaintiff could occasionally lift 100 pounds or more, frequently lift up to 20 pounds, stand or walk 6 hours, and had no impairment of sitting or pushing. R. 218-219.

Dr. Scott L. Meyers at Shands at UF Clinic examined the plaintiff on May 5, 2003 and noted anterior cruciate ligamentous instability in the left knee and posterior ligament instability in the right knee, along with bilateral severe degenerative arthritis. Surgical intervention was not advised, anti-inflammatories and steroid injections were suggested. R. 259. X-rays of his knees showed bilateral knee tricompartmental osteoarthritis and bilateral paella alta. R. 261.

### F.     SUMMARY OF THE ADMINISTRATIVE HEARING

The plaintiff testified he had been out of work since November 2000. R. 286. He said he drives a maximum of fifteen miles each week, and has problems turning his neck and with stiff knees. R. 289. He discussed his previous job of cement finisher, in which he would carry bags of cement and sand up to 100 pounds up stairs and mix

cement with a mixing hoe. R. 291. He also worked a s a plumber carrying materials during an eight hour shift. R. 292.

The plaintiff said that because of problems with his knees he can no longer stand on a ladder, carry weight, or squat and kneel. R. 293. The arthritic condition of his knees is also developing in his hands and neck. *Id*. He stated that sitting comfortably requires him to "kick back and straighten [his] legs out," because bending his knees is painful. R. 294. Sitting with his legs bent for more than fifteen minutes would make his knees hurt, so that he would have to stand for 5 to ten minutes. R. 295.

The ALJ asked the plaintiff about Dr. Sharma's observations that the plaintiff could sit for 8 hours straight and stand 6 hours. The plaintiff replied that the examination only lasted about 15 minutes and he thought he could only stand for about 4 or 5 hours at a time. R. 296. He said he could not sit all day because of pain and stiffness in his legs, he would have to get up every twenty minutes for 7 to ten minutes. R. 297. Dr. Sharma's found that the plaintiff could lift over 100 pounds, which the plaintiff denied. The plaintiff said he did not know what would give Dr. Sharma that indication, that there were no weights in the room during the exam and he "wasn't tested in that way." R. 297. The plaintiff said he could comfortably lift 35 pounds. R. 298.

When asked if he thought he could do the job of a ticket-taker or cashier, the plaintiff replied that he could. R. 298. When asked if he could work in a booth, the plaintiff said he could not, because he would have to walk to get his circulation going. R. 299.

**No. 1:04CV105-MMP/AK**

The plaintiff said in an 8-hour work day he would have to stand about six times for ten to 15 minutes at a time. R. 301. He was unsure about the exact amounts of time because he has not worked since his condition had worsened. R. 302.

On a scale of one to ten, with ten being the most painful, the plaintiff said his pain was a six on a good day and eight on worse days, with worse days occurring five days of the week. R. 302.

The plaintiff said he is prescribed Bextra but tries to take natural medications because the others make him dizzy and nauseous. R. 303. He has not taken over the counter pain medicines like Tylenol and Advil for years because he has prescribed medications and due to the side effects and his religion he is trying to take natural medicines. R. 304. The plaintiff said Dr. Meyers suggested the use of natural medicines to avoid the side effects of nausea and dizziness. R. 305. The plaintiff said he stopped smoking over 20 years ago and does not drink. R. 306.

On the scale of one to ten, the plaintiff said his neck pain was usually a six, with bad days being an eight. R. 306. He said the pain in his hands prevents him from properly gripping tools and effects his wrist motions, making it impossible for him to do masonry or plumbing work. R. 307.

On a daily basis, the plaintiff said he typically cleans his house and makes his own meals. R. 307. For his religion he distributes literature once a week, either standing or sitting for about 45 minutes. R. 308. About twice a week he does pool exercises for

**No. 1:04CV105-MMP/AK**

his knees. R. 309. He walks home from the grocery store with a cart about three blocks, or seven minutes. R. 311.

## G. DISCUSSION

Plaintiff claims that the ALJ rejected his claims of pain without evidentiary support, and that objective medical evidence supports a finding of the level of pain he reports. Plaintiff points to the ALJ's statement at R. 21 as being conflicting:

> In reaching this conclusion, the undersigned considered the claimant's subjective allegations of pain to be generally consistent with the opinions of his treating physicians as to his impairments and therefore credible. The undersigned did not find the claimant's allegation that he was totally disabled as a result of his impairments to be credible.

Plaintiff urges that if the ALJ found his allegations of pain to be credible, then he must accept the severity and limitation described by the Plaintiff. If the ALJ rejects his allegations, Plaintiff contends that he must articulate clear reasons for rejecting his testimony and he has failed to do this.

Pain and other subjective symptoms are treated by the regulations as symptoms of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, "unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." Accord 20 C.F.R. § 416.929. In Hand v. Heckler, 761 F.2d 1545, 1549 (11th Cir. 1986), the Eleventh Circuit adopted the following pain standard:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical

**No. 1:04CV105-MMP/AK**

>condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

The Eleventh Circuit continues to follow the Hand test. Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991); Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991); Martin v. Railroad Retirement Bd., 935 F.2d 230, 233 (11th Cir. 1991). "While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." Elam, 921 F.2d at 1216. The court has held that "[p]ain alone can be disabling, even when its existence is unsupported by objective evidence." Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), citing Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987). Standing alone, however, a claimant's testimony of pain is not conclusive evidence of disability. Macia v. Bowen, 829 F.2d 1009, 1011 (11th Cir. 1987). If the Commissioner rejects a claimant's allegations of pain, he must articulate explicit and adequate reasons, and these reasons must be based on substantial evidence. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). The failure to articulate adequate reasons for discrediting pain testimony mandates that the testimony be accepted as true as a matter of law. Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

The Commissioner responds that the ALJ clearly articulated his reasons for determining that Plaintiff's pain did not disable him by basing his decision on the reports of Dr. Myers and Dr. Sharma, who found in 2003 that Plaintiff had full range of motion and could ambulate with a normal gain despite his pain and discomfort. R. 19. The ALJ

**No. 1:04CV105-MMP/AK**

also relied on the fact that only conservative treatment was recommended and neither doctor suggested surgery to correct his knee problems.  R. 19.  The ALJ also relied upon the RFC assessments of Drs. Myers and Polavarapu.  Dr. Myers found Plaintiff capable of performing sedentary work without prolonged weight bearing activities.  Dr. Polavarpu was of a more limiting opinion, but his assessment was completed in 2001, two years before that of Dr. Myer.  The ALJ also relied upon Plaintiff's own assessment, as stated at the hearing, that he could lift up to 35 pounds, stand for 4 to 5 hours in a day, sit for 15 minutes with a 5 to 7 minute break to stretch and stand, and his belief that he could be a ticket seller or parking lot attendant.

This Court is limited in its review of the administrative decision to whether there was substantial evidence to support the ALJ's decision, whether it agrees with that decision or not.  Here the ALJ had two doctors reports and two RFC's completed by examining physicians to support his decision that although Plaintiff was in severe pain, it was not sufficiently disabling to preclude him from performing sedentary work.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **AFFIRMED**.

At Gainesville, Florida, this   20th   day of June, 2006.

                                              **s/ A. KORNBLUM**
                                              **ALLAN KORNBLUM**
                                              **UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.

**No. 1:04CV105-MMP/AK**